Filing # 55756029 E-Filed 04/28/2017 04:57:08 PM

IN THE CIRCUIT COURT OF THE 13th JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

VOCATIONAL DEVELOPMENT GROUP, LLC d/b/a BEHAVIOR DEVELOPMENT GROUP, a Florida corporation,

    Plaintiff,

v.

AETNA HEALTH, INC., a Florida corporation,

    Defendant.

## COMPLAINT

**COMES NOW** the Plaintiff, Vocational Development Group, LLC d/b/a Behavior Development Group, a Florida corporation (hereinafter referred to as "Behavior DG"), by and through undersigned counsel, brings an action against the Defendant, Aetna Health, Inc., a Florida corporation, and in support of its legal and equitable claims for affirmative relief, the Plaintiff alleges the following:

### GENERAL ALLEGATIONS

1. This is an action for damages at law and for equitable relief that is within the jurisdiction of this Court, exclusive of court costs, pre-judgment interest, and reasonable attorney's fees.

2. The Plaintiff is a Florida corporation licensed and registered to conduct business in Florida and licensed under the laws of Florida to render American Behavioral Association ("ABA") therapies to children within Florida, with its principal place of business at 333 Las Olas Way, CU1, Ft. Lauderdale, Florida 33301. All services rendered in this action were rendered in the homes of the patients and billed from this location, further payments associated with this action are due and payable at this location.

3. The Defendant is and was, at all times material to this action, a Florida corporation licensed and registered to conduct business in Florida that offers healthcare coverage and administers healthcare plans and policies to its subscribers and issues payment of healthcare contract benefits to hospitals and medical providers on behalf of its subscribers by and through its administration, control, management, ownership and operation of Health Plans, including health maintenance organizations ("HMO's"). The Defendant maintains its principal place of business at 4630 Woodlands Corporate Boulevard, Tampa, Florida 33614.

4. The Defendant provides comprehensive healthcare services to enrolled subscribers who either remit regular premium payments to the Defendant or are provided coverage through their employer.

5. The Defendant provides, either directly or through arrangements with its network of contracted health care facilities and providers, comprehensive prepaid health care services to subscribers enrolled in its

Health Plan, who in exchange for such prepaid healthcare coverage, either remit regular premium payments to the Defendant or have such premium payments issued payable on their behalf through government financed and sponsored healthcare plans and policies (referred to as "Medicaid Replacement Plan").

6. Upon request of several of the Defendant's enrolled subscribers, the Plaintiff agreed to furnish behavioral services to subscribers enrolled in the managed care company owned and operated by the Defendant, in exchange for usual, customary and reasonable payment terms, as no contract between the Plaintiff and Defendant exists.

7. The Plaintiff provides behavioral health treatment and ABA therapies to autistic children to aid in behavior development. There are two types of providers of these services, a behavior therapist and a behavior analyst. Each child has one behavior analyst and one behavior therapist assigned to them to make home visits and render services.

8. Both behavior analysts and behavior therapists hold advanced degrees in their respective fields and are licensed to provide ABA therapies. The various CPT codes which are billed by the Plaintiff to managed care companies for behavior analysts are billed at $240.00 per hour. Pursuant to FAIR Health, this is well within usual, customary and reasonable for billed charges for the geographic areas in which the Plaintiff renders these services. Behavior therapists are billed at $120.00 per hour, also usual, customary and reasonable pursuant to FAIR Health.

9. In all instances of the rendering of behavioral services to subscribers enrolled with the Defendant's health plan, the Plaintiff sought and obtained the proper pre-authorization/certification prior to the billed date of service.

10. Authorization and certification does not guarantee payment, but generally leads to proper payment pursuant to the usual, customary and reasonableness of the charges given the jurisdiction.

11. Florida Statutes § 627.6686(3)(b) mandates the following:
Treatment of autism spectrum disorder and Down syndrome through speech therapy, occupational therapy, physical therapy, and applied behavior analysis. Applied behavior analysis services shall be provided by an individual certified pursuant to s. 393.17 or an individual licensed under chapter 490 or chapter 491.

12. Pursuant to the foregoing, the Defendant is expressly obligated to provide compensation to those rendering proper behavior analysis services on behalf of their enrolled subscribers.

13. On or before March of 2016, subscribers enrolled with the Defendant presented themselves to the Plaintiff with patients on the autism spectrum who qualified for coverage under Florida Statutes § 627.6686.

14. Under the agreements and/or arrangements entered into with the subscribers enrolled in the Defendant's healthcare plan, the Defendant agreed to cover the medical charges incurred by these subscribers

during their enrollment as subscribers in the Defendant's healthcare plan during the effective period under which the Defendant contracted with them to provide these subscribers with comprehensive healthcare coverage (hereinafter referred to as the "effective coverage period").

15. Copies of the healthcare coverage agreements entered into between the Defendant and its enrolled subscribers are not attached to this Complaint, as said agreement is in the possession of the Defendant and/or its enrolled subscribers and not the Plaintiff, but the Plaintiff will produce the agreements during the course of discovery in this action.

16. Pursuant to the terms, conditions and payment provisions of the healthcare coverage agreements entered into between the Defendant and its enrolled subscribers, the Defendant agreed to provide *primary healthcare coverage* to its enrolled subscribers under which the Defendant assumed both the obligation and responsibility to issue healthcare benefits payable on behalf of its enrolled subscribers to behavioral analysis providers who rendered necessary and appropriate care, services and supplies to its enrolled subscribers during the effective coverage period of the healthcare coverage policy.

17. By obligating and requiring the Defendant to issue healthcare benefits payable on behalf of its enrolled subscribers payable to behavioral health providers that rendered medically necessary and appropriate services and supplied to its enrolled subscribers during the effective coverage period, the Defendant clearly expressed an intent to primarily and directly benefit the Plaintiff and that class of providers that rendered behavioral health care to its enrolled subscribers during the effective coverage period of the healthcare coverage period.

18. During the course of rendering care and treatment to the subscribers enrolled in the Defendant's healthcare plan, the Plaintiff, by and through its staff of licensed behavioral health professionals, provided reasonable, necessary and appropriate behavioral health services to these subscribers.

19. These reasonable, necessary and appropriate hospital-based medical and rehabilitative services and supplies for these three subscribers were provided from March 2016 through the present.[1]

20. As a result of providing appropriate and necessary hospital-based medical and surgical services and supplies to subscribers enrolled in the Defendant's healthcare plan, the Plaintiff incurred substantial costs and expenses in providing such care. The current amounts outstanding are unknown, as the damages continue to accrue. Further, explanations of benefits ("EOBs") issued by the Defendant following the processing and payment of HCFA-1500 claim forms generated by the Plaintiff and transmitted to the Defendant in the regular course of business would serve to validate the Plaintiff's claims. These EOBs have not been attached hereto as they are too voluminous and contain information protected by HIPAA.

21. The patients included in this action are Florida residents and the sums billed by the Plaintiff

---

[1] All subscribers are still currently seeking treatment with the Plaintiff, despite Aetna's gross underpayment of these claims. This will cause damages to continue to accrue throughout the course of the litigation.

reflect the total billed charges and usual, customary and reasonable ("UCR") charges that the Plaintiff bills for services and supplies which the Plaintiff provided to the subscribers enrolled in the Defendant's healthcare plan. These sums do not reflect any contractual payment provisions contained in the written agreements entered into between the parties. As the Plaintiff, despite requesting to enroll as a participating provider with the Defendant, is currently not a member of the Defendant's network and thus the Defendant is not entitled to a contractual discount.

22. The Plaintiff establishes, maintains and premises its billed charges in accordance with the prevailing charges that other behavioral health providers in same or similar geographical area, who are engaged in the same or similar medical specialty as the area of expertise practiced by the Plaintiff and its staff professionals, charge for the same or similar behavioral health therapies offered and rendered by the Plaintiff.

23. In furtherance of obtaining reimbursement from the Defendant for the services and supplies that the Plaintiff provided to these two subscribers, the Plaintiff duly and timely transmitted each bill for the patients enrolled with the Defendant to the Defendant in a timely and orderly manner.

24. The Plaintiff forwarded, in the regular course of business, standardized HCFA-1500 claim forms describing the services rendered and the amounts due thereupon on furtherance of securing payment from the Defendant.

25. The Plaintiff fully cooperated and furnished any and all information, including the submission of a standardized HCFA-1500 claim form, and when requested by the Defendant, medical charts, notes and records, and fully complied with all procedures and requests in furtherance of obtaining payment from the Defendant for the charges that these subscribers incurred during their treatment by members of the Plaintiff's staff beginning in March of 2016.

26. Despite the Plaintiff's proper and timely submission to the Defendant of the itemized claim forms and the Plaintiff's full cooperation with the Defendant in all respects, the Defendant has arbitrarily and unjustifiably refused to compensate the Plaintiff for even half of the charges that its enrolled subscribers incurred during their treatment with the Plaintiff from March 2016 to the present.

27. In derogation of its statutory obligation to pay the usual, customary and reasonable charges incurred by these subscribers, the Defendant has arbitrarily and unjustifiably refused to fully compensate the Plaintiff for the charges that these subscribers incurred during their courses of treatment at the Plaintiff's facility in March of 2016.

28. The Plaintiff referred the matter to its attorney who has contacted the Defendant seeking the resolution of the parties' dispute and requesting that the Defendant issue payment to the Plaintiff for the services and supplies the Plaintiff provided to these providers in good faith and with the expectation of payment thereupon.

29. As such, the Plaintiff remains entitled to recover court costs expended and reasonable

attorney's fees incurred during the prosecution of this action.

## COUNT I – BREACH OF THIRD PARTY BENEFICIARY CONTRACT

The Plaintiff re-alleges paragraphs 1 through 29 as if fully set forth herein and further alleges.

30. The Plaintiff has rendered reasonable and necessary behavioral analysis treatment to the South Florida based Enrollees from March of 2016 through the present, and has incurred substantial costs and expenses as will be established throughout the pendency of this action.

31. As alleged above, both the Defendant and the South Florida based subscribed enrollees have designated and identified the Plaintiff as being the intended beneficiary of the benefits payable under the healthcare plan.

37. The South Florida based enrollees expressly designated the Plaintiff to be the intended beneficiary of benefits payable by the Defendant under the terms and conditions of the healthcare plan by assigned their benefits to the Plaintiff thereby validity assigning to the Plaintiff the right to seek healthcare benefits due from and payable by the Defendant.

38. The Plaintiff has performed all conditions precedent to be performed by the Plaintiff, or the conditions have occurred or been waived.

39. Pursuant to the terms, conditions and payment provisions of the healthcare plan that covered the subscribed enrollees during the term of their enrollment in the plan, the Defendant remains primarily and principally obligated to and responsible for compensating the Plaintiff for the charges which the enrollees incurred as a result of receiving Florida mandated, medically necessary and appropriate behavioral health care and treatment from the Plaintiff.

40. The Defendant has materially breached the terms of the plan by arbitrarily and capriciously underpaying the Plaintiff's billed charges by unilaterally applying an unreasonable payment methodology and by unjustifiably discounting the Plaintiff's billed charges and reducing the level of benefits payable to the Plaintiff.

41. The Plaintiff has sustained damages because of the Defendant's arbitrary and capricious breach of the terms and conditions of the plan and based upon its failure to fully and properly reimburse the Plaintiff for the charges that the subscribed enrollees incurred as a result of receiving care and treatment from the Plaintiff in contravention of its obligations to pay and satisfy such charges as required by applicable Florida Statutes.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Aetna Health, Inc., a Florida corporation, an amount to be established through discovery and expert testimony, court costs, pre-judgment interest, reasonable attorney's fees and such other relief as this Court deems proper and just.

## COUNT II – UNJUST ENRICHMENT

Plaintiff realleges paragraph 1 through 29 as if set forth herein and further alleges.

42. The Plaintiff provided behavioral health therapies mandated by Florida law to members enrolled with the Defendant commencing on or about March 2016, with the Defendant's express or implied knowledge and authorization.

43. Florida law prohibits the Plaintiff from balance billing the subscribers for the large balance left following a partial payment received by their managed care company or HMO.

44. The Defendant entered into written contracts with the Plaintiff that obligate the Defendant to pay for the behavioral health services and supplies received by its subscribers. Therefore, an assignment of the benefits of the written contracts entered into between the Defendant and its subscribers arose in favor of the Plaintiff.

45. Despite receiving the benefit of having its subscribers receive behavioral health services and supplies to its subscribers from the Plaintiff and receiving the benefit from collecting and appropriating insurance premiums paid by or on behalf of its subscribers, the Defendant has failed to adequately reimburse the Plaintiff for the behavioral health services and supplies its subscribers received from the Plaintiff according to the contractual payment provisions contained in the written agreements entered into between the parties.

46. Because of its failure to properly reimburse the Plaintiff for the hospital and medical services and supplies its subscribers received from the Plaintiff, the Defendant has been unjustly enriched at the expense of the Plaintiff.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Aetna Health, Inc., a Florida corporation, an amount to be established through discovery and expert testimony, court costs, pre-judgment interest, reasonable attorney's fees and such other relief as this Court deems proper and just.

          **JORGE M. ABRIL, P.A.**
          *Attorneys for Plaintiff*
          1200 Brickell Avenue, PH 2000
          Miami, Florida 33131
          Telephone: 305.373.0901
          Facsimile: 305.373.0119

          By: /s/ Sinead Baldwin
               SINEAD BALDWIN, ESQ.
               FBN: 105051
               sbaldwin@abrilaw.com